UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 06-160-HRW

JOHN H. MAYS,                                                              PLAINTIFF,

V.                        **MAGISTRATE JUDGE'S REPORT
                          AND RECOMMENDATION**

ENCOMPASS INSURANCE
COMPANY OF AMERICA                                              DEFENDANT.

## I. INTRODUCTION

This matter has been referred to the undersigned [R. 21] for purposes of issuing a report and

recommendation regarding the Defendant's Motion for Summary Judgment. [R. 20]. The Plaintiff

has filed a Response, and has moved for summary judgment on the issue of liability. [R. 22]. Having

considered the briefs of the parties, and being otherwise fully advised, this Court recommends, for

the reasons set forth within, that the Defendant's Motion for Summary Judgment be granted, and that

the Plaintiff's Motion for Summary Judgment be denied.

## II. FACTUAL & PROCEDURAL BACKGROUND

This case arises from a motorcycle accident that occurred on April 4, 2005, in or near West

Palm Beach, Florida. [R. 20, Memo. at 1]. The Plaintiff and his wife were on vacation in Florida

with their friends, Rodney and Tina Justice. [R. 22, Affid. of Rodney Justice, at 1]. The two couples

were staying at a condominium owned by Paul Scanlon, a friend of Rodney Justice. [Id.].[1] Mr. Justice had vacationed at the condominium in the past, and Mr. Scanlon gave him permission to use any of Mr. Scanlon's vehicles that were on the premises. [Id.]. These vehicles included a Lexus, a Mitsubishi Spider convertible, and a Harley-Davidson motorcycle. [R. 20, Memo. at 2].

On the morning of April 4, 2005, while their wives were shopping, the Plaintiff and Mr. Justice decided to ride the Harley-Davidson motorcycle. [Id.]. Mr. Justice gave a "cursory look" at the motorcycle prior to riding it and didn't notice any "obvious defect or maintenance issue." [R. 22, Affid. of Rodney Justice at 1]. He then "test drove the motorcycle for several blocks before Mr. Mays got on the passenger seat of the motorcycle." [Id.]. After the Plaintiff got on the motorcycle, the two men drove for approximately an hour, and then stopped to eat lunch. [Id. at 2].

The accident occurred when the two men were returning from lunch. According to the Plaintiff, when they were approximately five or six miles from the condominium, the motorcycle veered onto the right shoulder. Mr. Justice was able to bring the bike back onto the roadway; as he told the Plaintiff that he wasn't sure what had happened, the bike veered onto the should again, and struck the guardrail. [R. 20, Memo. at 3]. When the motorcycle hit the guardrail, the Plaintiff was thrown from the motorcycle, and sustained severe injuries. [Id.]. The entire incident occurred in a very short period of time, according to the Plaintiff, only a few seconds. [Id.]. There is no evidence in the record that there was any kind of mechanical or tire failure, nor is there any evidence that Mr. Justice was speeding. [Id; R. 22, Affid. of Rodney Justice at 2].

---

[1] The record does not clearly indicate the nature of the relationship between the Plaintiff and Mr. Scanlon. The Defendant refers to Mr. Scanlon as a "mutual friend" of the Plaintiff and Mr. Justice. [R. 20, Memo. at 1]. In his affidavit, Mr. Justice states that "[t]o the best of my knowledge, John Mays did not have any conversations with Mr. Scanlon prior to traveling to Florida." [R. 22, Affid. of Rodney Justice, at 1].

2

At the time of the accident, the Plaintiff had an automobile insurance policy through the Defendant, Encompass, that provides underinsured ["UIM"] motorist coverage. [R. 22, Memo. at 4]. The Plaintiff's policy provided the following UIM coverage:

> We will pay compensatory damages which any covered person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury.
> 1.    Sustained by any covered person, and
> 2.    Caused by an accident arising out of the ownership, maintenance or use of an underinsured motor vehicle.

[R. 22, Exh. B "UIM Policy" p.2]. Based on his UIM policy with the Defendant, the Plaintiff filed the present action in Boyd Circuit Court [R. 1], which was subsequently removed to United States District Court by the Defendant. [R. 3]. The Defendant filed a Motion for Summary Judgment on January 9, 2008. [R. 20]. The motion is fully briefed, and the matter is now ripe for decision.

### III. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

While the court must view all facts in the light most favorable to the non-moving party and give him or her the benefit of all reasonable inferences that can be drawn from the facts, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), the non-moving party cannot avoid summary

3

judgment merely by resting on the pleadings. See Celotex, 477 U.S. at 324. Instead, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In other words, "the nonmoving party must present 'significant probative evidence' to show that 'there is [more than] some metaphysical doubt as to the material facts.'" Dixon v. Gonzales, 2007 WL 750532 (6th Cir. 2007) (citing Moore v. Phillip Morris Cos., 8 F.3d 335, 339-40 (6th Cir. 1993)). Thus, where the record, taken as a whole, cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 586-87.

Additionally, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, "[t]he nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." In re Morris, 260 F.3d 654, 665 (6th Cir. 2001).

## IV. ANALYSIS

The Defendant makes the following three arguments in support of the Motion for Summary Judgment:

1. Plaintiff is not entitled to UIM benefits because there was no negligence involved in the underlying motorcycle accident.
2. The motorcycle is not an "underinsured vehicle" pursuant to Plaintiff's policy.
3. In the alternative, Encompass is entitled to partial summary judgment in its favor on the issue of the Plaintiff's comparative negligence.

[R. 20]. The Plaintiff responds by seeking summary judgment in his favor on the issue of liability.

[R. 22, Memo. at 3]. In addition, the Plaintiff counters the Defendant's remaining arguments by

claiming that the motorcycle falls within the definition of "underinsured vehicle," and that summary judgment is inappropriate as to the issue of comparative fault. [Id. at 3-9]. These arguments will be discussed in turn.

**A. Summary Judgment as to Liability**

Both parties argue that they are entitled to summary judgment on the issue of liability. The Defendant argues that summary judgment is appropriate because the Plaintiff cannot meet the requirements necessary to recover UIM benefits; specifically, the UIM policy states: "[w]e will pay compensatory damages which any covered person is *legally entitled to recover from the owner or operator of an underinsured motor vehicle* because of bodily injury." [R. 22, Exh. A "UIM Policy" p.2 (emphasis added)]. In other words, in order to recover UIM benefits, there must be someone who was legally responsible for the accident. The Defendant contends that Mr. Justice was not legally responsible for the underlying accident, and therefore, the Plaintiff cannot recover UIM benefits. [R. 20, Memo. at 5-6]. The Plaintiff counters by claiming that he is entitled to summary judgment on the issue of liability because Mr. Justice is legally responsible for the accident because he failed to maintain control of the motorcycle. [R. 22, Memo. at 1-3]. Under Kentucky law, in order to prove that an individual is "legally responsible," it is not necessary to obtain a judgment against the tortfeasor; rather, the Kentucky courts use the "essential facts" approach. Nationwide Mut. Ins. Co. v. Hatfield, 122 S.W.3d 36, 40-41 (Ky. 2003); see also, Coots v. Allstate Ins. Co., 853 S.W.2d 895 (Ky. 1993). In order to recover under the essential facts test, the Plaintiff must "prove the fault of the underinsured motorist and the extent of damages caused." Hatfield, 122 S.W. 3d at 41.

As noted *supra*, summary judgment is appropriate where there are no genuine issues of material fact. Fed. R. Civ. Pro. 56(c). Once a party has made a motion for summary judgment, the

5

non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In the present case, the Plaintiff has not met his burden of showing that there is a genuine issue of material fact, and summary judgment against the Plaintiff is appropriate.

The Plaintiff has brought forward no evidence to show that Mr. Justice was negligent in his operation of the motorcycle. The Plaintiff's position is essentially that, given the lack of evidence, and the statements of the Plaintiff and Mr. Justice, "there can be only one conclusion and that is that Mr. Justice, the operator, failed to maintain control of the motorcycle." [R. 22, Memo. at 3]. The Plaintiff is correct that an operator of a vehicle is required to maintain control, but the Kentucky statute cited does not create a strict liability standard. Rather, Kentucky law establishes that a driver has a "duty of care not to be negligent in the operation or control of their vehicle." Pile v. City of Brandenburg, 215 S.W.3d 36, 42 (Ky. 2006).

In the context of a motion for summary judgment, the "nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission of the issue to the jury." Fishbach-Natkin, Inc. v. Shimizu America Corp., 854 F. Supp. 1294, 1299 (E.D. Mich. 1994). The Plaintiff's position as to liability is summarized as follows:

> Here, Mr. Mays has no evidence that there was a mechanical issue which caused Mr. Justice to lose control. In fact, Mr. Justice admitted that there was no mechanical issue. Mr. Justice has admitted that Mr. Mays did not do anything to cause the loss of control. Both Mr. Mays and Mr. Justice have admitted that there was no other vehicle that caused the loss of control. *Therefore, there can only be one conclusion and that is that Mr. Justice, the operator, failed to maintain control of the motorcycle.*

[R. 22, Memo. at 3 (emphasis added)].[2] The Plaintiff has failed to produce any evidence that would require this case to be submitted to a jury on the issue of liability. The only evidence before the Court regarding the accident is the affidavit of Mr. Justice, and excerpts from the Plaintiff's deposition. The deposition and affidavit give very similar descriptions of the accident itself, so there is no genuine issue as to which version of the facts should be accepted. Furthermore, the Plaintiff, in his deposition, made statements that he didn't believe Mr. Justice materially caused the accident. [R. 22, Memo. at 3].

Regardless of whether the Plaintiff's statements are considered to be judicial admissions as to negligence, the Plaintiff has not provided this Court with any evidence that Mr. Justice was negligent in his operation of the motorcycle. The Plaintiff merely asserts that negligence must exist, this is not sufficient to survive a motion for summary judgment. In the absence of negligence, the Plaintiff is not entitled to UIM benefits, and therefore, the undersigned recommends that the Defendant's Motion for Summary Judgment [R. 20] be granted, insofar as the Plaintiff has failed to create a genuine issue of material fact as to whether Mr. Justice was negligent in his operation of the motorcycle.

**B. Status of Motorcycle as "Underinsured" Vehicle**

In the event the District Court does not adopt the recommendation of the undersigned regarding liability, the Court will address the remaining arguments of the Defendant. As noted *supra*, in order to recover UIM benefits under his policy, the Plaintiff must show that he is "legally entitled to recover from the owner or operator of an underinsured motor vehicle." [R. 20, Exh. A]. The

---

[2] The Plaintiff's argument that "there can be only one conclusion" sounds in *res ipsa loquitur*, which has not been pled, and likely is not applicable to the facts at hand. See Shepperd v. Shepperd, 2003 WL 21771972 (Ky. App. 2003) *citing* Cox v. Wilson, 267 S.W.2d 83 (Ky. 1954).

7

Defendant contends that the Plaintiff is not entitled to recover UIM benefits because the motorcycle was "furnished and available for his regular use," and thus, it was not an "underinsured motor vehicle" within the meaning of the UIM policy. [R. 20, Memo. at 7]. The Plaintiff responds that the motorcycle qualifies as an underinsured motor vehicle, as it was only available for the temporary use of the Plaintiff and "was not furnished for the regular use of Mr. Mays or any of his family members." [R. 22, Memo. at 5].

The Plaintiff's UIM policy provides a detailed definition of "insured motor vehicles" and "underinsured motor vehicles," as well as providing specific exclusions. [R. 22, Exh. B, "UIM Policy" ¶2-3 ]. The relevant exclusion in the present case is an exclusion for injuries sustained while "operating or occupying a motor vehicle owned by, leased by, furnished to, or *available for the regular use* of a covered person..." [Id. ¶2c (emphasis added)].  The resolution of the present issue turns on whether the motorcycle involved in the accident was "available for the regular use" of the Plaintiff.

The term "regular use" is not defined within the Plaintiff's UIM policy, and this Court " must give clear and unambiguous terms in an insurance policy their plain and ordinary meaning." Edwards v. Carlisle, 179 S.W.3d 257, 259 (Ky. App. 2004). Under the most general definition, "regular use" means, "[a] use that is usual, normal or customary, as opposed to an occasional, special, or incidental use." Black's Law Dictionary, (8th Ed. 2004). "'Regular use' has been defined by the Kentucky courts to mean that the vehicle can 'usually and regularly be had or be used whenever it is wanted, needed or desired and that such use can be made without seeking permission of the owner for each such use." Nationwide Mut. Ins. Co. v. Tingle, 759 F. Supp. 353, 354 (W.D. Ky. 1990) *citing* Kentucky Farm Bureau Mut. Ins. Co. v. Cook, 590 S.W. 2d 885, 890 (Ky. App. 1979). Kentucky

8

courts have made it clear that the need to seek permission is a "relevant factor," but not dispositive

of the issue. See Grange Mut. Cos. v. Bradshaw, 724 S.W.2d 216, 219 (Ky. App. 1986). Though not

controlling under Kentucky law, the test set forth by the West Virginia Supreme Court in American

States Insurance Co. v. Tanner, 563 S.E.2d 825, 832 (W.V. 2002) identifies many of the proper

considerations in determining whether a vehicle is provided for "regular use:"

> factors that may be considered in determining whether a vehicle has been furnished
> or made available for the insured's or a family member's regular use include, but are
> not limited to: (1) the general availability of the vehicle; (2) the frequency of the use,
> *i.e.*, habitual, frequent, or principal use as opposed to temporary, casual, or occasional
> use; (3) the restrictions, if any, placed upon the vehicle's use; and (4) the nature of
> the use, *i.e.*, whether the vehicle was used for a single occasion or limited purpose.

Id. The cases cited by the Defendant involving regular use of a vehicle involve situations where the

vehicle at issue is owned by a family member, Murphy v. Kentucky Farm Bureau Mut. Ins., 116

S.W.3d 500 (Ky. App. 2003) (vehicle owned by victim's mother), or where the injured party had

consistent, long-term access to the vehicle. Nationwide Mut. Ins. Co. v. Tingle, 759 F. Supp. 353

(W.D. Ky. 1990) (vehicle involved was "take home" vehicle provided to driver by his employer).

   The facts of the case *sub judice* do not reveal the type of use that the Kentucky courts would

find to be "regular" for purposes of a motion for summary judgment. The Plaintiff was vacationing

in Florida for a brief period of time with Mr. Justice, and they stayed at the home of Mr. Scanlon.

Mr. Scanlon, the owner of the motorcycle, told Mr. Justice that the guests were free to use the

motorcycle and other vehicles while they were in Florida. [R. 22, Affid. of Rodney Justice at 1]. The

arrangement appears to be temporary in nature; there is no evidence that the Plaintiff had ever used

the vehicles before, or that Mr. Scanlon was granting the Plaintiff a long-term ability to utilize the

vehicles. Indeed, in the case of Grange Mut. Cos. v. Bradshaw, 724 S.W.2d 216 (Ky. App. 1986),

the court refused to find "regular use" despite the fact that the driver was a close friend and employee of the owner, and had taken the vehicle for personal, overnight use on several occasions. Id. at 219. The use in Bradshaw was much more extensive than in the present case, and the decision weighs strongly against finding "regular use" under the current circumstances.

The facts of the present case indicate that this was a situation where Mr. Scanlon extended to his guests the opportunity to use his vehicles while they were staying in his home. Such a temporary arrangement does not make the motorcycle available for "regular use." The motorcycle qualifies as an "underinsured motor vehicle" within the meaning of the Plaintiff's UIM policy. The Defendant's Motion for Summary Judgment [R. 20] should be denied, insofar as it claims that the motorcycle falls within the "regular use" exclusion to the Plaintiff's UIM policy.

## C. Plaintiff's Comparative Fault

The Defendant also argues that the Plaintiff "breached his duty to exercise reasonable care for his own safety when he elected to ride as a passenger on the motorcycle driven by Mr. Justice," and therefore the Defendant is entitled to summary judgment on the issue of the Plaintiff's liability. [R. 20, Memo. at 8-9]. The Plaintiff responds that there is no affirmative evidence to show that the Plaintiff violated any statutory duty. [R. 22, Memo. at 8].

The Defendant correctly notes that under Kentucky law, a passenger in a vehicle can be charged with contributory fault. See, e.g., Wemyss v. Coleman, 729 S.W. 2d 174, 177 (Ky. 1987) (passenger's failure to wear a seatbelt); Motorists Mut. Ins. Co. v. Glass, 996 S.W.2d 437, 443 (Ky. 1997) (passenger injured while riding with intoxicated driver). Though the parties cite no cases that are directly on point, this Court believes that the present matter is analogous to the line of cases involving intoxicated drivers. In order to find that a passenger is at fault in cases involving

10

intoxicated drivers, the Kentucky courts have stated the following:

> The rule followed by the majority seems to be that the question must be left to the jury unless three things are obvious, (1) that the driver had been drinking to the extent that his ability to drive was affected, (2) that the person electing to ride with him must have known it, and (3) that a prudent person faced with the same choice under like circumstances would not have ridden with the driver.

Isaac v. Allen, 429 S.W.2d 37, 40 (Ky. 1968). Similar to the arguments made in the Isaac line of cases, the Defendant now argues that "[i]t was the Plaintiff's voluntary and admittedly negligent actions in riding a motorcycle with an inexperienced and unlicensed driver on a highway where they admittedly should not have been that lead to the Plaintiff's injuries." [R. 20, Memo. at 9].

In Davidson v. Davern, 385 S.W.2d 44 (Ky. 1964), the court noted that a passenger can be negligent for "knowingly continuing to ride, without protest, in an automobile which is being operated recklessly." Id. at 46. In a recent Kentucky case, Jackson v. Tullar, 2007 WL 1574567 (Ky. App. 2007), an injured passenger was partially at fault because she had failed to use ordinary care for her own safety when she chose to ride with someone whom she knew was extremely intoxicated. Turning to the facts at hand, the case simply does not present a situation where the Plaintiff chose to continue riding with Mr. Justice after he had demonstrated an inability to drive the motorcycle, nor do the facts meet the three-part test spelled out in Isaac v. Allen, supra.

The Defendant's argument simply goes too far, and any possible fault of the Plaintiff should be determined by a jury. The Defendant's Motion for Summary Judgment [R. 20] should be denied, insofar as it claims that this Court should find that the Plaintiff is partially at fault for the accident.

## V. CONCLUSION

Accordingly, and for the reasons stated above, it is hereby recommended that the Plaintiff's Motion for Summary Judgment [R. 22], be DENIED; the Defendant's Motion for Summary Judgment [R. 20], be GRANTED as to the issue of liability, and that this matter should be dismissed.

In the alternative, if the District Court rejects the undersigned's recommendations regarding liability, it is recommended that the Defendant's Motion for Summary Judgment on the issues of "regular use" and comparative fault both be DENIED.

Specific objections to this Report and Recommendation must be filed within ten (10) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749-750 (E.D. Ky. 2002). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within ten (10) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Rule 72(b), Fed. R. Civ. P.

Signed May 14, 2008.



**Signed By:**

*__Edward B. Atkins__*  𝓔𝓑𝓐

**United States Magistrate Judge**

12